IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NEUTRAL POSTURE, INC. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 22-3354 |
| MILLERKNOLL, INC. (Successor in Interest to KNOLL, INC.) | : | |
| | : | |

**MEMORANDUM**

**Chief Judge Juan R. Sánchez** **April 25, 2023**

Defendant, MillerKnoll, Inc., has filed a Motion to Dismiss the Plaintiff, Neutral Posture, Inc.'s, Complaint or, in the alternative to stay these proceedings pending the outcome of ongoing parallel proceedings in the Philadelphia County Court of Common Pleas. Because the Court finds that several of the counts in the Complaint should be dismissed and the remainder of the case stayed, the Defendant's Motion shall be granted.

**FACTUAL BACKGROUND**

This case arises from an Asset Purchase Agreement ("APA") entered into by the parties on December 23, 2014[1] under which Neutral Posture agreed to purchase, and Knoll (now MillerKnoll)[2] agreed to sell, a line of commercial furniture products known as the "Equity" line. The purchase price for the product line was $1 million plus quarterly royalty payments equal to

[1] The December 23, 2014 APA is an amended and restated version of an earlier agreement between the parties dated September 2, 2014. Pl.'s Compl. Ex. 2, ECF No. 1-2.

[2] While the record is unclear as to when or how Knoll merged with or became a part of MillerKnoll, as noted in footnote 1 to the Complaint, the name "MillerKnoll" was announced on July 20, 2021. Although the defendant company was "Knoll" at the time the parties entered into the APA, because this action was filed more than one year after the name change, it shall be referred to throughout this Memorandum as "MillerKnoll."

2.5% of net sales for a five-year period. Compl. ¶¶41, 43, 50, ECF No. 1. The Equity line is a system of portable wall panels that functions as a foundation to which additional components such as work surfaces, tables, desks, filing cabinets, shelving and chairs can be attached and which can be flexibly configured to form cubicles, open plan and/or benching environments within a given workspace. *Id.* ¶¶ 27-29. Since August of 1992, Equity® has been a federally-registered trademark[3] "used in connection with the manufacturing, advertising, and sale of portable wall panels which, together with other office furniture items, are collectively known as 'systems' furniture." *Id.* ¶ 27. The Equity® mark was among the assets included in Neutral Posture's purchase of the Equity product line under the APA, and since that time, Neutral Posture has expended approximately $3.7 million in promoting and advertising its goods and services under the mark. *Id.* ¶¶ 41, 45, 55.

Despite a covenant in the APA that from September 2, 2014 through June 22, 2015, MillerKnoll would "not willfully take any action that is intended to be detrimental to the Assets or the Product Line," Neutral Posture avers that "throughout 2014 and up to the date of this filing,"[4] MillerKnoll "took *calculated* steps to frustrate the transition of Equity Line's ownership to Neutral Posture and to its overall value." *Id.* ¶¶ 52, 57. Those steps included, among other things: failing to issue press releases informing the public and existing Equity line customers that the product line had been transferred to, and orders for Equity products could be placed with, Neutral Posture after

[3] Equity® is the subject of federal registration No. 1,763,700 ("the '700' registration") issued by the United States Patent and Trademark Office ("USPTO") on August 4, 1992 to Westinghouse Electric Corporation, for "portable wall panels in Class 20." Compl. ¶ 23, ECF No. 1; Compl. Ex. 1, ECF No. 1-1. The mark was one of over 60 trademarks acquired by MillerKnoll from its predecessor-in-interest relating to office furniture and office furniture systems on April 4, 1996. *Id.* ¶ 24.

[4] The Complaint in this action was filed on August 22, 2022.

October 31, 2014; failing to provide Neutral Posture with its existing customer contact information; and failing to instruct its personnel to stop using the Equity® mark after the sale to Neutral Posture. *Id.* ¶¶ 59-65, 72, 76. Instead, MillerKnoll: (1) told prospective furniture customers that October 31, 2014 was the last day they could place orders for Equity products; (2) specifically targeted high-volume Equity line customers and persuaded them to switch to its competing "Dividends and Currents" office furniture system; (3) adopted the trademark "EQ" as part of its other office furniture systems and advertised the ways in which its EQ products could functionally integrate with Equity products; and (4) embedded the Equity® mark into its website's metadata so as to route internet searchers for "equity" office furniture to MillerKnoll's website instead of Neutral Posture's. *Id.* ¶¶ 66-68, 71, 77-81, 82-85. These actions had the effect of creating a sudden and "massive" rush of Equity product orders for MillerKnoll (approximating $2.3 million) in the final two days leading up to October 31, 2014, confusing customers as to the actual sources of the competing product lines and diverting potential customers from Neutral Posture to MillerKnoll. *Id.* ¶¶ 80-81, 83-89. As a result, and "[i]n stark contrast" to the $10 million in annual sales MillerKnoll told Neutral Posture to expect from sales of the Equity product line, Neutral Posture has not realized more than $3.5 million in annual sales since its acquisition of the line in October 2014. *Id.* ¶¶ 92-94.

"In the face of MillerKnoll's egregious acts, Neutral Posture commenced an action in the Philadelphia County Court of Common Pleas, Civil Trial Division on June 21, 2017 by filing a Complaint." *Id.* ¶ 95. Originally, the state court complaint had claims for breach of contract (Count I), fraud in the inducement (Count II), negligent misrepresentation (Count III), tortious interference with existing and prospective contractual relations (Count IV), common law unfair competition (Count V), commercial disparagement (Count VI), civil conspiracy (Count VII),

violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-2, *et. seq.* ("UTPCPL) (Count VIII), and unjust enrichment, (Count IX). Def.'s Mot. Dismiss Pl.'s Compl., Ex. A. ECF No. 10. MillerKnoll removed Neutral Posture's state case to this Court two days after it was filed and before it could be served, endeavoring to invoke the "snap-removal" exception to the forum defendant rule which it alleged was available under 28 U.S.C. § 1441(b)(2). Judge Goldberg, however, rejected this argument and, finding removal inappropriate, granted Neutral Posture's motion to remand to the Philadelphia County Court of Common Pleas. *See* Apr. 12, 2017 Order in Civ. No. 17-2854, ECF No. 9; Def.'s Mot. Dismiss, Ex. B, ECF No. 10. Following remand, in Orders dated August 29, 2018 and December 22, 2020, Common Pleas Court Judge Ramy Djerassi dismissed Neutral Posture's claims for tortious interference with existing contract, violation of the Pennsylvania UTPCPL, unjust enrichment, civil conspiracy, fraud in the inducement and negligent misrepresentation. Def.'s Mot. Dismiss Pl.'s Compl., Ex. D. Hence, the following claims "remain pending for resolution at trial: breach of contract (Count I), tortious interference with prospective contractual relations (Count IV), common law unfair competition (Count V), and commercial disparagement (Count VI)." *Id.* ¶ 96.

Many of the facts alleged and claims raised in the state court complaint mirror those alleged in Neutral Posture's complaint in this case. The complaint here has five claims: trademark infringement under 15 U.S.C. § 1114 (Count I), unfair competition and false designation of origin under 15 U.S.C. § 1125(a) (Count II), common law trademark infringement (Count III), common law unfair competition (Count IV), and violation of the Pennsylvania UTPCPL (Count V). MillerKnoll moves to dismiss the complaint in its entirety as barred under the doctrine of *res judicata* or claim preclusion or alternatively to stay this matter pending the outcome of the state court action.

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss a complaint may be filed on the grounds that it "fail[s] to state a claim upon which relief can be granted." To survive such a motion, the complaint must "state a claim to relief that is plausible on its face," and must contain enough facts to "nudge [the plaintiffs'] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts must give a complaint's factual allegations the presumption of truth and draw reasonable inferences in favor of the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 921, n.1 (3d Cir. 2015). However, Courts do not have to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* A claim is facially plausible when the facts alleged in the complaint allow a court to draw a reasonable inference that the defendant is liable. *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 604 (3d Cir. 2015).

Although ordinarily a court may not consider documents outside the pleadings when deciding a motion to dismiss, where a document is "integral to and explicitly relied upon in the complaint," its consideration is proper. *See Fallon v. Mercy Catholic Med. Ctr.*, 877 F.3d 487, 493 (3d Cir. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). In addition, admittedly authentic public documents and matters of public record, including judicial proceedings and opinions from other courts in other cases, may also be considered in resolving a motion to dismiss. *Stratechuk v. Bd. of Educ.*, 200 F. App'x 91, 94 (3d Cir. 2006); *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp.*, 181 F.3d 410, 426 (3d. Cir. 1999). While a court may consider whether a prior judgment has preclusive effect in resolving a Rule 12(b)(6) motion to dismiss, consideration of the other court's opinion entering

judgment is limited to determining only the opinion's existence. *M & M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010). The court may not consider the truthfulness of the facts set forth therein because that would convert it to a summary judgment motion. *Id.*

**DISCUSSION**

MillerKnoll asserts that Neutral Posture's claims in this action are barred by application of claim preclusion principles (the *res judicata* doctrine) because they were either already raised or could have been raised in the still-pending action in the Philadelphia Court of Common Pleas. Alternatively, MillerKnoll asks this Court to abstain and stay this matter due to the state court action, which was filed five years before and is duplicative to this one. Neutral Posture rejoins that because this complaint is premised upon MillerKnoll's continued violations of the APA and its ongoing unfair trade practices and trademark infringement, its claims are new ones, based on different conduct than that which is the subject of the state court case. Thus, Neutral Posture asserts it is not precluded from raising them in this suit. As to MillerKnoll's abstention request, Neutral Posture disputes the parallel nature of these cases inasmuch as the Lanham Act claims exist only in the federal court matter. Because the Court finds the trademark infringement claims could have been brought in the state court, Neutral Posture's argument fails.

Federal courts have "a strict duty to exercise the jurisdiction that is conferred upon them by Congress," but this duty is not absolute. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colo. River Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (internal citation omitted). Abstention is properly invoked only "where the order to repair to the State court would clearly serve an important countervailing

interest." *Id.* However, where there is a parallel ongoing state court proceeding that raises "substantially identical claims and nearly identical allegations and issues," abstention may be appropriate. *Id.*; *Nationwide Mut. Fire Ins. Co. v. George v. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009). In determining the propriety of abstention, six factors must be considered:

> (1) [in an in rem case], which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.

*Nationwide*, 571 F.3d at 308. "No one factor is determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Id.* (quoting *Colorado River*, 424 U.S. at 818-19). The Third Circuit has held that "the mere potential or possibility that two proceedings will resolve related claims between the same parties is not sufficient to make those proceedings parallel; rather there must be substantial similarity in issues and parties between contemporaneously pending proceedings." *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 283-84 (3d Cir. 2017).

Moreover, federal courts are required to give state court judgments the same preclusive effect that the issuing state courts would give them. *Moncrief v. Chase Manhattan Mortg. Corp.*, 275 F. App'x 149, 153 (3d Cir. 2008). For this reason, this Court must look to Pennsylvania's iteration of the claim preclusion doctrine to determine its applicability here. *M & M Stone Co.*, 388 F. App'x at 161 (internal citation omitted). Under Pennsylvania law, "*res judicata* – literally, a thing adjudicated – is a judicially-created doctrine [which] bars action on a claim, or any part of a claim which was the subject of a prior action or could have been raised in that action." *Appeal of Coatesville Area Sch. Dist.*, 244 A.3d 373, 378 (Pa. 2021). "The doctrine developed to shield parties from the burden of re-litigating a claim with the same parties or a party in privity with an

original litigant and to protect the judiciary from the corresponding inefficiency and confusion that relitigation of a claim would breed." *Wilkes v. Phoenix Home Life Mut. Ins. Co.*, 902 A.2d 366, 376 (Pa. 2006). "Four elements common to both actions, sometimes called the 'four identities,' must be present for *res judicata* to apply: 'an identity of issues, an identity of causes of action, identity of persons and parties to the action, and identity of the quality or capacity of the parties suing or being sued.'" *Coatesville*, 244 A.3d at 379 (quoting *In re Iulo*, 766 A.2d 335, 337 (Pa. 2001)).

In comparing Neutral Posture's complaint in this case with its complaint in the Common Pleas Court, while the titles of the causes of action may differ,[5] the parties and capacity of the parties are identical and thus these identities are in alignment in these contemporaneously pending proceedings. So too is there an identity of the issues given they arise out of MillerKnoll's sale of the Equity furniture systems line to Neutral Posture pursuant to the APA and MillerKnoll's alleged wrongdoing thereafter. Indeed, the alleged facts and wrongdoing are substantially the same in both cases.[6] And with respect to Counts V and VIII in the state court action and Counts IV and V

[5] Again, in the state case, Neutral Posture's complaint had eight counts: breach of contract, fraud in the inducement, negligent misrepresentation, tortious interference with contractual and prospective contractual relations, common law unfair competition, commercial disparagement, civil conspiracy, and unfair competition in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-2, *et. seq.* Def.'s Mot. Dismiss Ex. A. ECF No. 10. Neutral Posture's complaint in this case contains five counts: infringement of federally registered trademarks in violation of 15 U.S.C. § 1114, unfair competition and false designation of origin, in violation of 15 U.S.C. § 1125(a), common law trademark infringement, common law unfair competition, and unfair competition in violation of the Pennsylvania UTPCPL. Compl. ECF No. 1.

[6] There are, however, some additional details pled in ¶¶ 82-89 of the federal complaint regarding MillerKnoll's development and use of the "confusingly similar" EQ mark in conjunction with its marketing of its office furniture systems line in competition with Neutral Posture's Equity line "sometime after the APA was executed," and in ¶ 90 as to results of a June 2017 Google search for the term "Equity" on MillerKnoll's website. Neutral Posture also pleads new facts in ¶¶ 98-101 concerning Neutral Posture's November 1, 2021 bankruptcy filing and alleges in ¶¶ 102-120

in this one, both of which assert MillerKnoll's actions constituted common law unfair competition and violated the Pennsylvania UTPCPL, all four of the identities obviously align. The UTPCL claim was dismissed in the state court by Judge Djerassi for failure to state a claim because no facts were alleged regarding any personal, family or household goods as required for the statute to apply. Def.'s Mot. Dismiss Ex. C, ECF No. 10. None of the necessary allegations appear in the federal complaint either, but even if they did, this claim has already been adjudicated and Count V must therefore be dismissed pursuant to *res judicata*. The unfair competition claim remains pending in the Common Pleas Court and thus there has been no adjudication to date and claim preclusion does not apply to that claim.

As noted, *res judicata* precludes not only the subsequent re-assertion of a previously adjudicated claim but also those which could have been brought in the earlier action. Here, the state court complaint contains numerous allegations concerning MillerKnoll's continued use of the Equity® mark and brand and its re-direction of internet searchers for "Equity" in connection with office furniture to MillerKnoll's website and products in violation of the APA. Def.'s Mot. Dismiss Ex. A ¶¶ 58-65, ECF No. 10. More specifically, Neutral Posture alleged in ¶¶ 58 and 65

---

that "[n]otwithstanding the ongoing State Court Litigation between the parties," MillerKnoll's issuance of new catalogues and price lists for its current product offerings in early 2022 show MillerKnoll's continued use of the Equity® mark in its marketing, promotional and sales activities of its own products. *Id.* It is noteworthy that in various places, the state court complaint also contains more detailed factual allegations not found in the federal counterpart. For example, ¶¶ 32-37 contain allegations that, under the guise of providing training to operate the manufacturing equipment, MillerKnoll actually used Neutral Posture employees to build Equity® Line products to fill the sudden and massive rush of orders which it generated for itself in the final days leading up to October 31, 2014. Def.'s Mot. Dismiss Ex. A ¶¶ 32-37, ECF No. 10. But these allegations do nothing more than provide additional information regarding Neutral Posture's existing claims and how they arose - they do not give rise to new or different causes of action. *See e.g., Labelle Processing Co. v. Swarrow*, 72 F.3d 308, 314 (3d Cir. 1995) (noting that while new facts, *i.e.* events occurring after events giving rise to an earlier claim, may give rise to a new claim which is not precluded by an earlier judgment, new factual allegations supporting a previously denied claim will not create a new cause of action for the same injury).

of the state court complaint that MillerKnoll is "wrongfully continuing to use the Equity® trademark on its website." Additionally, in Count V of the state court complaint, Neutral Posture's common law unfair competition claim is premised upon its ownership and the reputation of the Equity® trademark and line of products. Compl. ¶¶ 97-102. In that Count, Neutral Posture avers that MillerKnoll, "with the wrongful intent to injure or harm Plaintiff's business," attempted to trade on this reputation by using the Equity name in its deceptive selling practices, misleading advertising "and by other means" which directly and proximately caused customer confusion so the "Plaintiff's name or identity as relating to the Equity® Line of products has been endangered or lost. *Id.* These averments are equivalent to those made in Counts I, II and III of the complaint in this action for common law trademark infringement and trademark infringement and unfair competition/false designation of origin under the Lanham Act. Thus, the trademark infringement/Lanham Act claims could easily have been included in the state court action and Neutral Posture is precluded from now asserting them in this one. Counts I, II and III shall also be dismissed under *res judicata*.[7]

---

[7] In so holding, this Court rejects Neutral Posture's argument that it "could not and cannot now pursue its remedies under the Lanham Act" for MillerKnoll's misconduct from 2017 to the present in the state action because it "cannot pursue damages for post-filing conduct in that litigation." Pl.'s Resp. Opp. Def.'s Mot. Dismiss 6, ECF No. 12. In support of this argument, Neutral Posture cites just one case: *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589 (2020), which is distinguishable from the case at bar. In *Lucky Brand*, the Supreme Court was tasked with deciding whether "defense preclusion" is a valid application of *res judicata.* Holding that any preclusion of defenses that could have been raised and decided in a prior action must at minimum satisfy the strictures of issue preclusion or claim preclusion, the Supreme Court noted that claim preclusion generally "does not bar claims that are predicated on events that postdate the filing of the initial complaint," and "this principle takes on particular force in the trademark context where the enforceability of a mark and likelihood of confusion between marks often turns on extrinsic facts that change over time." *Id.* at 1596 (internal citations omitted). However, the two suits at issue in *Lucky Brand* were grounded on different conduct which occurred at different times and involved different marks. *Id*. at 1595. Consequently, the two actions did not share a "common nucleus of operative facts," did not "arise from the same transaction," and did not involve the same claim or cause of action. *Id.* (internal citations omitted). Therefore, the Supreme Court held "claim

While this Court finds it necessary to dismiss four of the five counts in the federal complaint, Count IV appears to present an identical claim for common law unfair competition to that contained in Count V of the state court complaint. Inasmuch as this claim remains pending before the state court and a judgment has not yet been entered, this Court next considers whether to abstain from exercising its jurisdiction with respect to Count IV and instead defer to the Court of Common Pleas.

Applying the six-factor test established in *Colorado River*, the Court first finds this matter is not *in rem* and thus the first factor has no relevance. In view of the approximate distance of one mile between the Philadelphia Court of Common Pleas and this Courthouse, both forums are equally convenient and the second factor is neutral for purposes of this analysis. Avoidance of piecemeal litigation is nearly always desirable, and thus the third factor weighs in favor of this Court's abstention. The fourth, fifth and sixth factors also all militate in favor of abstention insofar as the state court action was filed some six years ago and is presumably trial-ready, whereas this action is in its infancy, and the remaining claims in both matters are state law claims controlled by

---

preclusion did not and could not bar Lucky Brand from asserting its settlement agreement defense in the [subsequent] action." *Id.* at 1596.

Although *Lucky Brand* is not dispositive of the issue in this case, its analysis is instructive. In addition to the directive to look for the common nucleus of operative facts, the Supreme Court also advised that claims to relief may be the same for purposes of claim preclusion if, among other things, "a different judgment in the second action would impair or destroy rights or interests established by the judgment in the first action." *Id*. at 1595. A judgment has yet to be entered in the state court action between these parties, but regardless, the alleged conduct and mark are the same in both of the actions at issue, as is the timing of at least some of the complained-of conduct. It is quite conceivable that should different judgments be rendered in these actions, the rights or interests of at least one of the parties could be impaired or destroyed. And comparison of the pleadings in these cases also renders Neutral Posture's contention that the trademark infringement claims in this matter arose out of post-filing conduct disingenuous. Counts I, II and III in this action are simply a re-casting of Neutral Posture's state law claims under a different legal theory. If the averments in the state court complaint are proven to be true, Neutral Posture can show MillerKnoll's wrongful conduct was ongoing and resulted in even greater damages to it.

state law. Finally, the Court notes that Neutral Posture first chose the Philadelphia Court of Common Pleas as its forum court and successfully obtained a remand of the state court action from the Eastern District, despite being a Texas corporation with principal place of business in Texas. Given that MillerKnoll is the moving party seeking abstention, it also clearly agrees the Philadelphia Court is an appropriate forum and thus, this Court finds the parties' interests will be adequately protected in the state court. Abstention is appropriate and this Court shall therefore abstain from exercising jurisdiction in this matter. The motion to dismiss shall be granted and this case -- now reduced to Count IV -- shall be stayed pending the outcome of the state court action.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez

Juan R. Sánchez, C.J.